In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2005 DEC -1  P 2: 29

| | | |
|---|---|---|
| Brenda A. Green, | ) | Civil Action No. 9:04-22106-RBH-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | **OF THE MAGISTRATE JUDGE** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

This case is before the Court pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).

The plaintiff, Brenda A. Green (the "Plaintiff" or "Claimant"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.[1]

---

[1] The Social Security Disability Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while employed. The regulations for determining disability are set forth at 20 C.F.R. pt. 404.

Page 1 of 16

## II. BACKGROUND TO CLAIM

Plaintiff was born on March 23, 1951. She graduated from high school and has an additional nine months of training as a medical health specialist. (Tr. 188) She worked in the past in retail sales for twelve years and as a nurse's assistant for twenty one years. (Tr. 190) She has been diagnosed with insulin-dependent diabetes mellitus ("IDDM"), and underwent the amputation of her great right toe in November 2001.

## III. ADMINISTRATIVE PROCEEDINGS

On January 25, 2002, Plaintiff filed an application for DIB, alleging disability since August 24, 2001, due to insulin-dependent diabetes mellitus ("IDDM") for which she was hospitalized. (Tr. 58-60, 72) Plaintiff's IDDM eventually led to the amputation of her great right toe in November 2001.[2] Plaintiff's medical records also indicate hypertension and a history of chronic renal insufficiency. (Tr. 145-147, 149-152)

Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. (Tr. 40-44, 47-49) On December 19, 2002, Plaintiff timely filed a request for hearing. (Tr. 52)

On September 9, 2003, a hearing was held before Administrative Law Judge Albert A. Reed (the "ALJ"), in Columbia, South Carolina. (Tr. 22) Plaintiff completed a Right to Counsel form which stated that she wished to proceed with the hearing without being represented by an attorney (Tr. 57) and informed the ALJ that she had elected to proceed with the hearing without legal representation. (Tr. 185) Plaintiff testified that she stopped working on November 4, 2001,

---

[2] Plaintiff alleged disability as of August 24, 2001 due to problems with her toe, which was amputated in November 2001. (Tr. 72)

due to problems with her big toe stemming from complications from IDDM. (Tr. 189-190, 192) She also testified that her treating physician recommended she leave work on disability a year earlier, but she continued to work. She had her right great toe amputated on November 27, 2001, three weeks after she stopped working, and she stated the wound had healed quickly. (Tr. 128, 191) Plaintiff testified that she has had to elevate her leg when it swelled from too much standing, but had only done so about five or six times in the two years between the time of the amputation and the time of the hearing. (Tr. 192-93) Plaintiff also testified that she has problems sleeping, feels physically weak, and generally lacks motivation; she attributes those feelings to the her insulin dependency. Her insulin dosage has been increased since the amputation. (Tr. 193) Plaintiff has tried to return to her former job as an assistant manager of a retail store on "sit down duty, " but her employer let her go and would not accommodate her need to sit. (Tr. 193-94)

Plaintiff testified that her daily activities consisted of straightening up a bit, cooking "a little something" and sweeping "a little", doing laundry, and reading the Bible. She attends church services three times a week. (Tr. 194-195)

The ALJ asked J. Adger Brown, the vocational expert ("VE") present at the hearing, whether there would be jobs available for a person with the Plaintiff's education and past job experience, who was limited to doing light exertional work (due to diabetes), and was given a sit/stand option with sitting or standing up to an hour at a time, and staying within the work area.[3]

---

[3] Light work is defined in the Regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she

The VE testified that within those parameters, skills would not transfer, but at the unskilled and light level, a person could work as a quality control inspector, assembler, or parts packer, and listed the respective numbers of jobs available in the state and the United States. (Tr. 199)

The ALJ considered the case *de novo*, and on March 24, 2004, found that the Plaintiff was not under a disability as defined in the Social Security Act, as amended. (Tr. 19-29)

On May 19, 2004, Plaintiff requested review by the Appeals Council. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 15, 2004. (Tr. 5-7) Plaintiff has exhausted her administrative remedies, the parties have briefed the case, and it is now ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g).[4]

## IV. THE COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff was not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's diabetes mellitus and absent right great toe are considered "severe" based on the requirement in the Regulations 20 C.F.R. § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

---

can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. 404.1567(b) (2004); Social Security Ruling 83-10.

[4] Plaintiff retained counsel for purposes of this appeal.

6.  The claimant has the following residual functional capacity: light work with a sit/stand option where the claimant can sit for an hour, stand for an hour, but not leave the work station.

7.  The claimant is unable to perform any of her past relevant work (20 C.F.R. § 404.1565).

8.  The claimant is an "individual closely approaching advanced age" (20 CFR § 404.1563).

9.  The claimant has more than a high school education (20 C.F.R. § 404.1564).

10. The claimant does not have any readily transferable work skills from any past relevant work (20 C.F.R. § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

13. The claimant is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).  (Tr. 28-29)

## V. SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Pass v. Chater, 65 F.3d 1200 (4th Cir. 1995); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).



The Court's scope of review is specific and narrow. It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Teague v.

Califano, 560 F.2d 615, 618 (4th Cir. 1977). Such evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shivey v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. Craig, 76 F.3d at 589. If substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. Blalock, 483 F.2d at 775.



Nevertheless, this deferential standard of review does not mean that "the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F2d. 278, 279 (4th Cir. 1969). The court also must determine whether the Commissioner's decision complies with applicable law. Myers v. Califano, 611 F.2d 980 (4th Cir. 1982). Therefore, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Agency's] findings, and that [the] conclusion is rational. Vitek v. Finch, 438 F.2d 1157, 1157-1158 (4th Cir. 1971) (citations omitted). "A factual finding by an ALJ is not binding if it has been reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517

(4th Cir. 1987). "Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to Section 405(g). Vitek, 438 F.2d at 1158 (citations omitted); see also Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## VI.  THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment which
> can expected to result in death or which has lasted or can be
> expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (2004); Heckler v. Campbell, 461 U.S. 458 (1983); Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). The five questions are:

> (1) whether the claimant is engaged in substantial gainful activity as defined in Sections
> 404.1510, 404.1571 *et seq.* If such determination is affirmative, no disability will be
> found. 20 C.F.R. § 404.1520.

(2) whether the claimant's impairments meet the durational requirement (Section 404.1509), and are severe (Sections 404.1520(c). If they do not meet those requirements, no disability will be found. 20 C.F.R. §§ 404.1509, 404.1520(c).

(3) whether the claimant has an impairment which meets or medically equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. § 404.1520(d). If one of the listings is met, disability will be found without consideration of age, education or work experience. 20 C.F.R. § 404.1520(d).

(4) whether the claimant has an impairment which prevents past relevant work. 20 C.F.R. § 404.1520(e).

(5) whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no." 20 C.F.R.§ 404.1520(f).



An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments (20 C.F.R. Pt. 404, Subpart P, App. 1), or capable of returning to former work. In such case, further inquiry is unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the national economy. Hall, 658 F.2d 260; English v. Shalala, 10 F.3d 1080 (4th Cir. 1993); Harper v. Bowen, 854 F.2d 678 (4th Cir. 1988); Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a

vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir.1983).

## VII.  ANALYSIS OF THE ALJ'S DECISION

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, the ALJ first found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 28, Finding 2)  With respect to Steps Two and Three, the ALJ determined that Plaintiff had a combination of impairments considered to be "severe" based upon the requirements in the Regulations,[5] but these medically determinable impairments did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 28, Findings 3-4)  Proceeding to Step Four, the ALJ found that the Plaintiff's impairments prevented her from performing any of her past relevant work and that Plaintiff did not have any readily transferable skills from any past relevant work.  (Tr. 28, Findings 7, 10)

At Step Five, the burden shifted to the Commissioner to come forward with evidence that other work existed in significant numbers in the national economy that accommodated Plaintiff's residual functional capacity and vocational factors.  The ALJ took testimony from the VE, and then determined that Plaintiff had residual functional capacity to perform a "significant range" of light work.  (Tr. 28, Finding 11)  The ALJ used the Medical-Vocational Guidelines Rules 202.14 as a framework for decision-making and found that there were a "significant number of jobs" that

---

[5]  An impairment or combination of impairments is considered "severe" when it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1520(c); Social Security Ruling ("SSR") 96-3p.

Plaintiff could perform, and that Plaintiff was not disabled under the Social Security Act. (Tr. 28, Finding 12)

## VIII. PLAINTIFF'S OBJECTIONS

The Plaintiff raises two objections in her Brief, which are quoted verbatim below:

Objection I.   **The finding that Plaintiff can perform the standing and walking requirements of light work, even with a sit/stand option, lacks the support of substantial evidence and is based on legal error.**

Objection II.  **The ALJ's rejection of the credibility of Plaintiff's complaints is based on legal error.**

## IX. DISCUSSION

### A. Introduction

The Commissioner has the burden of fully and fairly developing the facts. Richardson v. Perales, 402 U.S. 389, 410 (1971). Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-831 (8th Cir. 1994). It must be remembered that the claimant bears the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir.1981); 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Similarly, the claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).



Here, the ALJ found that although Plaintiff's impairments, considered in combination, imposed some limitations, Plaintiff nevertheless retained the residual functional capacity ("RFC") to perform a "significant range" of light work and that jobs existed in significant numbers in the economy. As discussed further below, the ALJ's findings and conclusions are supported by

substantial evidence in the record as a whole. Accordingly, this Court recommends that the Commissioner's decision be affirmed.

### B. Analysis of Plaintiff's Objections

**Objection I.     The finding that Plaintiff can perform the standing and walking requirements of light work, even with a sit/stand option, lacks the support of substantial evidence and is based on legal error.**

Plaintiff argues by Brief that her primary disabling impairment is her IDDM and its "destructive impact on her feet," which led to the amputation of her great right toe and an inability to stand.[6] Plaintiff relies upon the records of her treating physician, Dr. Lance, to support her claim that she was disabled; Dr. Lance stated in a letter dated September 15, 2003 that he considered her "totally and permanently disabled" because she had "significant and severe medical problems with regards to renal insufficiency, hypertension, diabetes and hypercholesterolemia.[7] (Tr. 173) Dr. Lance noted that Plaintiff was not able to balance herself, and she could walk for less than one hour, stand for less than one hour, and sit from six to eight hours each work day. (Tr. 174)

Plaintiff contends that the ALJ erred by "flatly reject[ing]" Dr. Lance's opinion, and argues that "[t]he record contains no other medical opinions to contradict those of Dr. Lance."[8]

The day Plaintiff was discharged from the hospital (November 29, 2001), Dr. Holmes noted she was "doing well" (Tr. 126). Dr. Holmes, followed up with Plaintiff post-operatively, noting that the would looked "good" on December 10, 2001 and that Plaintiff was "doing very

---

[6]   See Plaintiff's Brief at p. 11.

[7]   Dr. Lance also stated on a form that Plaintiff suffered from a bi-polar mental disorder (Tr. 175) but Plaintiff did not testify about that disorder at the hearing.

[8]   See Plaintiff's Brief at p. 11.

very well" as of January 21, 2002. (Tr. 137) Plaintiff also saw Dr. Lance, her primary care physician, on December 17, 2001, at which time she was "doing good--healing well". Although she had been told to walk with a cane, she was not using one. (Tr. 150) As Plaintiff testified to the ALJ, she had no problems with the amputation (Tr. 191), except that "sometime[s]" she was off-balance. (Tr. 193) Plaintiff also testified that she had had to elevate her foot five or six times in the last two years, but she did not articulate other complaints. (Tr. 193)

The ALJ noted that Plaintiff's IDDM and hypertension were "well controlled with medication" and thus correctly found that her IDDM or hypertension were not disabling. (Tr. 24) If a symptom can reasonably be controlled by medication or other treatment, it is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Indeed, Plaintiff's medical records from November 2001 indicate that her IDDM was "relatively well controlled" and her chronic renal insufficiency was "stable". (Tr. 121) As the ALJ noted, there was no evidence that Plaintiff was being treated for renal insufficiency. (Tr. 24) Furthermore, there was no evidence that Plaintiff's high cholesterol caused more than minimal limitations in her ability to perform work-related activities. (Tr. 25) The ALJ's determination that Plaintiff was not disabled by her IDDM, hypertension, or high cholesterol is supported by a lack of objective medical evidence demonstrating disability. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Accordingly, substantial evidence supports the ALJ's conclusion that neither of these were "severe" impairments. (Tr. 25)

Furthermore, although Plaintiff testified that she had weakness throughout her body and had difficulty sleeping, as the ALJ noted, there is no evidence that she mentioned such problems to Dr. Lance, or that she received any treatment for either of these complaints.

Page 12 of 16

Plaintiff also appeared to have been non-compliant with her physician's orders, although Plaintiff argues by Brief that such noncompliance is "of no moment".[9] However, a claimant's non-compliance is indicative of the lack of severity of an impairment as well as indicative of the lack of impact an impairment might have in functional capacity. In December 2001 and March 2002, Dr. Lance noted that Plaintiff was not taking her diabetes medications as prescribed. (Tr. 149-150) Plaintiff also missed several appointments with Dr. Lance, and he noted in June 2002 that Plaintiff was not properly monitoring her blood sugar. (Tr. 147) However, by August 2002, she was "feeling fine" and using insulin on an as-needed basis. (Tr. 145)

It is well settled that the determination of disability is a matter reserved to the Commissioner. *See* Craig v. Chater, 75 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 404.1527(e). Dr. Lance's opinion that Plaintiff was totally and permanently disabled speaks to the ultimate issue of disability in this case – a legal determination reserved to the Commissioner.

In this case, Dr. Lance's opinion was not supported by his own medical records, which indicated that Plaintiff's diabetes was controlled when she complied with her testing and medication regimen. In the Fourth Circuit, a treating source's opinion can be discounted if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not consistent with substantial evidence in the record. *See* Craig, 76 F.3d at 590, 20 C.F.R. § 404.1520(d)(2) (2004).

Furthermore, the ALJ's determination that Plaintiff could perform light work with a sit/stand option is supported by Plaintiff's own testimony. The record reflects that Plaintiff

---

<sup>9</sup> *See* Plaintiff's Brief at p. 13.

returned to work after her surgery, and "sit down and do [her] work" but her co-workers sat down with her, which caused conflict in the retail workplace. (Tr. 193)

In addition, Plaintiff presented no evidence at the hearing to rebut the VE's testimony, and thus the ALJ's finding that Plaintiff could perform other jobs which existed in significant numbers in the regional and national economies is supported by substantial evidence.

As stated above, the court's scope of review is specific and narrow. It cannot conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Furthermore, it is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456; see also Smith v. Chater, 99 F.3d at 638 (the duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court), *citing* Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993). In this case, substantial evidence supports the Commissioner's decision that a claimant is not disabled, so the decision must be affirmed. See Blalock, 483 F.2d at 775.

> **Objection II.    The ALJ's rejection of the credibility of Plaintiff's complaints is based on legal error.**

Plaintiff next argues that even though the ALJ correctly set forth the law regarding the determination of credibility, the ALJ failed to apply these principles and has set forth a "wholly unreasoned" determination of Plaintiff's credibility.[10]

---

[10]    *See* Plaintiff's Brief at p. 16.

The court notes that this case appears to have primarily revolved around the credibility of plaintiff's subjective complaints of pain and other problems stemming from her impairments. Although the ALJ acknowledged that plaintiff had certain impairments, the ALJ was not required to accept without question plaintiff's allegations regarding the *severity* of her symptoms. See Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996). Instead, in determining the credibility of Plaintiff's subjective complaints, the ALJ could consider all of the evidence–both medical and nonmedical. *See* Social Security Ruling 96-7p.



The ALJ must make credibility determinations based upon all the evidence in the record, and properly supported credibility determinations will be upheld. *See* Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The ALJ must make credibility determinations based upon all the evidence in the record, and properly supported credibility determinations will be upheld. Id. As noted above, judicial review under 42 U.S.C. § 405(g) is not a *de novo* examination of the factual record. The ALJ, rather than this court, has the advantage of live testimony from the witness. This permits weighing of evidence, assessment of credibility and resolution of conflicts in testimony which this court is in no position to accomplish. After the ALJ decision and Appeals Council consideration, the sole function of this court is to determine whether or not substantial evidence supports the conclusion. Even if this court should disagree with the Commissioner's conclusion, the weighing of evidence has already been done, and the decision must be upheld if it is supported by substantial evidence. Here, the ALJ's credibility determination is supported by substantial evidence. This court further finds no legal error in the ALJ's determination.

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Commissioner's decision **be affirmed.**

_____
George C. Kosko
United States Magistrate Judge

___Nov 30_____, 2005
Charleston, South Carolina